# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

KIRAH D.,

                                    Plaintiff,                              No. 3:18-CV-0110
                                                                           (CFH)

            v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                                    Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Lachman, Gorton Law Firm                      PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration                DANIEL STICE TARABELLI, ESQ.
Office of the General Counsel                 Special Assistant U.S. Attorney
15 Sudbury Street, Ste 625
Boston, Massachusetts 02203
Attorney for the Commissioner

Social Security Administration                BENIL ABRAHAM, ESQ.
Office of Regional General Counsel            Special Assistant U.S. Attorney
26 Federal Plaza
New York, New York 10019
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

        Plaintiff Kirah D. brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("the Commissioner") denying her

application for disability insurance benefits. Dkt. No. 1 ("Compl.").[1] Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 14, 18. Plaintiff filed a reply. Dkt. 19. For the following reasons, the determination of the Commissioner is affirmed in part and remanded in part.

## I. Relevant Background

### A. Factual Background

At the time of the hearing, plaintiff was a thirty-year-old female who lived with her mother. T. 691.[2] Plaintiff graduated high school, and was enrolled in online college courses. Id. at 692. Plaintiff previously was employed as a certified nursing assistant. Id. at 692-93.

### B. Procedural Background

On March 7, 2013, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. T. 872-78. Plaintiff alleged disability beginning on August 5, 2012. Id. at 872. Plaintiff's application for disability benefits was initially denied on June 20, 2013. Id. at 746-49. Plaintiff requested a hearing, and

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fᴇᴅ. R. Cɪᴠ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 7.

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 9. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

a hearing was held on September 30, 2016 before Administrative Law Judge ("ALJ") F. Patrick Flanagan.  Id. at 668-84, 752-53.  ALJ Flanagan determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from August 5, 2012, through the date of this decision."  Id. at 725.  The Appeals Council granted plaintiff's request for review, vacated the hearing decision, and remanded the case.  Id. at 741.  After the remand hearing, ALJ Marie Greener utilized the five-step disability analysis to determine that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from August 5, 2012 through the date of this decision."  Id. at 15.  The Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-4.  Plaintiff commenced this action on January 25, 2018.  See Compl.

## C. ALJ Decision

Applying the five-step disability analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 5, 2012, the alleged onset date.  T. 16.  The ALJ found at step two that plaintiff had the severe impairments of neuropathic pain; possible complex regional pain syndrome ("CRPS"), left shoulder; diffuse pain; and obesity.  Id. at 17.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in  20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 19.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

3

perform sedentary work because she can lift up to 10 pounds occasionally, lift less than 10 pounds frequently and, in an 8-hour workday, can sit for 6 hours and stand or walk for a total of 2 hours; except she needs to alternate sitting and standing, with sitting limited to 45 minutes at a time, then she needs to stand for 5 minutes or so, but does not have to leave the work area or station during the change of position. [Plaintiff] can stand or walk for only 5 to 10 minutes at a time. In addition, due to a shoulder impairment, [plaintiff] is limited to occasional reaching on the left, but has frequent use of the left upper extremity to handle and feel. [Plaintiff] has full use of the right upper extremity.

Id. at 20. At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Id. at 24. At step five, the ALJ determined that, after consulting with a vocational expert, and considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. Id. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined by the Social Security Act from August 5, 2012, through the date of this decision." Id. at 25.

## II. Legal Standard

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See

4

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit  . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work

6

experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. at 1180 (citing Berry, 675 F.2d at 467).

### III. The Parties' Arguments

Plaintiff first argues that the ALJ erroneously failed to find plaintiff's fibromyalgia ("FM") to be severe.  See Dkt. No. 14 at 15-18.  In connection with that argument, plaintiff contends that the ALJ failed to properly consider plaintiff's pain.  Id. at 17-18.  Second, plaintiff argues that the Appeals Council failed to consider new evidence.  Id. at 18-21.  Third, plaintiff argues that the ALJ improperly substituted her opinion for the undisputed medical opinions on the issues of work pace, attendance, and standing/walking.  Id. at 21-26.  Plaintiff contends that the ALJ violated the treating physician rule and otherwise improperly weighed the medical opinion evidence.  Id. at

23-26. Finally, plaintiff argues the step five determination is not supported by substantial evidence.  Id. at 26.

Conversely, the Commissioner first argues that plaintiff has not demonstrated that the ALJ's RFC determination is not supported by substantial evidence.  Dkt. No. 18 at 3-5.  The Commissioner contends that the ALJ properly weighed Dr. Jenouri's medical opinion.  Id.  Second, the Commissioner argues that many of the errors plaintiff sets forth in her brief, including issues regarding plaintiff's FM and the medical opinions of Dr. John Grable, Dr. Aaron Roy, and Dr. Tyler Slyngstad, are "at best, harmless."  Id. at 5-10.  Finally, the Commissioner argues that the Court does not have the jurisdiction to evaluate the Appeals Council's denial of review.  Id. at 10-14.

## IV. Analysis

### A. New Evidence Submitted to Appeals Council

Plaintiff argues that remand is required because the Appeals Council erred in failing to consider new evidence submitted after the ALJ rendered her decision.  See Dkt. No. 14 at 18-21.  The Commissioner argues that the Court does not have jurisdiction to evaluate the Appeals Council's denial of review.  See Dkt. No. 18 at 10-16.

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."  Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015) (quoting Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996)).  In reviewing the ALJ's

denial of disability insurance benefits, the Appeals Council considers "new and material" evidence so long as it "relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b); see Perez, 77 F.3d at 45 ("The only limitations stated in [20 C.F.R. § 416.1470(b)] are that the evidence must be new and material and that it must relate to the period on or before the ALJ's decision.").

As the Second Circuit set forth in Perez:

> A request for Appeals Council review of an ALJ's decision is the fourth and final stage in the administrative process of adjudicating claims for benefits under the Social Security Act. Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. 20 C.F.R. §§ 404.970(b), 416.1470(b). If the new evidence relates to a period before the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence submitted . . . [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); see also § 416.1470(b). When the Appeals Council grants review, the decision of the Appeals Council is the final decision of the [Commissioner]. See 20 C.F.R. §§ 404.981, 416.1481. However, if the Appeals Council denies review, the ALJ's decision becomes the [Commissioner's] final decision. See §§ 404.981, 416.1481. The final decision of the [Commissioner] is subject to judicial review. 42 U.S.C. § 405(g).

Perez, 77 F.3d at 44.

As an initial matter, the Court will address the Commissioner's argument that the Court does not have jurisdiction to review the Appeals Council's denial of review. Although the Commissioner is correct that, pursuant to § 405(g), this Court "only has jurisdiction over 'final decision[s] of the Commissioner . . .'" Dkt No. 18 at 12 (quoting

Sims v. Apfel, 530 U.S. 103, 107 (2000), which, in this case, is the ALJ's decision, it is well-settled that "[t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to *trigger review of the ALJ's decision.*" Allborty v. Comm'r of Soc. Sec., No. 6:14-CV-1428 (DNH/ATB), 2016 WL 770261, at *8 (N.D.N.Y. Jan. 28, 2016), report and recommendation adopted sub nom. Allborty v. Colvin, No. 6:14-CV-1428, 2016 WL 796071 (N.D.N.Y. Feb. 22, 2016) (citation omitted) (emphasis added). Thus, "the issue before the Court is whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case." Canady v. Comm'r of Soc. Sec., No. 1:17-CV-0367 (GTS/WBC), 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), report and recommendation adopted 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017); see Bushey v. Colvin, 552 F. App'x 97, 98 (2d Cir. 2014) (summary order) ("We do not believe that the Appeals Council erred by refusing to review the ALJ's decision in light of the new evidence that Bushey submitted to that body. The Appeals Council had substantial evidence supporting its decision to decline review, as the new evidence that Bushey presented did not alter the weight of the evidence so dramatically as to require the Appeals Council to take the case.").

Plaintiff proffered three sets of additional medical evidence to the Appeals Council for review, including medical evidence from (1) Neuro Medical Care, dated September 11, 2012 to May 20, 2016; (2) Neuro Medical Care, dated June 24, 2014 to November 26, 2017 and from University of Rochester Medical Center, dated January 1, 2001 to November 3, 2016; and (3) Dr. John C. Grable and Dr. Aaron J. Roy, dated

January 20, 2017 to January 25, 2017 and from University of Rochester Medical Center and Strong Memorial Hospital, dated October 6, 2016 to June 6, 2017.  T. 2.  As to the Neuro Medical Care records dated September 11, 2012 to May 20, 2016, the Appeals Council found that "[t]his is not new [evidence] because it is a copy of Exhibit(s) 6F and 41F," and, therefore, they "did not consider . . . this evidence."  Id.  As to Neuro Medical Care records dated June 24, 2014 to November 26, 2017 and the University of Rochester Medical Center records dated January 1, 2001 to November 3, 2016, the Appeals Council stated that "[t]his evidence does not show a reasonable probability that it would change the outcome of the decision."  Id.  To the extent that plaintiff argues that the Appeals Council failed to adequately explain its denial of this evidence, the Court notes that "the Appeals Council [is] not required to articulate a fact-specific reason for its decision to deny review."  Countryman v. Colvin, No. 6:15-CV-06131 EAW, 2016 WL 4082730, at *11 (W.D.N.Y. Aug. 1, 2016) (citing inter alia Martinez v. Barnhart, 444 F.3d 1201, 1208 (10th Cir. 2006) ("[N]othing in the statutes or regulations . . . requires . . . an analysis where new evidence is submitted and the Appeals Council denies review."); see Scanlon v. Colvin, No. 15-CV-0145-A, 2016 WL 4944332, at *11 (W.D.N.Y. Sept. 16, 2016) (same).  Plaintiff fails to demonstrate that this newly submitted evidence would "alter the weight of the evidence before the ALJ so dramatically as to require the [Appeals Council] to take the case."  Canady, 2017 WL 5496071, at *11; see also Scanlon, 2016 WL 4944332, at *11 (denying remand where "[p]laintiff fails to establish that the reports 'add[ed] so much as to make the ALJ's decision contrary to the weight of the evidence.'") (citation omitted).  As the

Commissioner notes, this newly-submitted evidence is "largely the same as the evidence the ALJ already had before him," including complaints of pain, which the ALJ took into consideration when rendering her decision. Dkt. No. 18 at 13; T. 22, 42-49, 652-65.

With regard to medical evidence submitted from Dr Grable and Dr. Roy dated January 20, 2017 to January 25, 2017 and University of Rochester Medical Center and Strong Memorial Hospital dated October 6, 2016 to June 16, 2017, the Appeals Council stated that "[t]his additional evidence [did] not relate to the period at issue" as the ALJ decided plaintiff's case through September 30, 2016. T. 2. Therefore, the Appeals Council reasoned that the newly-submitted evidence did "not affect the decision about where [she] was disabled beginning on or before September 30, 2016." Id. "The Second Circuit has held that 'medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing.'" Gurnett v. Berryhill, No. 16-CV-955-FPG, 2018 WL 3853387, at *4 (W.D.N.Y. Aug. 14, 2018) (quoting Carrera v. Colvin, No. 1:13-CV-1414 (GLS/ESH), 2015 WL 1126014, at *8 (N.D.N.Y. Mar. 12, 2015). In fact, "the Appeals Council's categorical refusal to consider new and material evidence solely because it was created after the ALJ's decision can constitute reversible error." Id. (citing inter alia Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004) ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly

12

suggests that, during the relevant time period, [her] condition was far more serious than previously thought.")).

As the Western District of New York reasoned in <u>Gurnett</u>, it is possible that this new evidence only demonstrates that plaintiff's condition worsened with time, and, therefore, would be irrelevant to his condition during the time frame the benefits were denied. <u>See</u> <u>Gurnett</u>, 2018 WL 3853387, at *4. However, it is "equally possible . . . that the new evidence clarifies a pre-hearing disability and suggests that [plaintiff's] condition was more serious than previously thought during the relevant time period." <u>Id.</u> Plaintiff's reply brief seems to suggest that the supplemental information from Dr. Grable and Dr. Roy clarifies issues that ALJ Greener raised in her decision, including the doctors' length of treatment with plaintiff and the different handwriting on the assessment. <u>See</u> T. 24, 647-651.

"A reviewing court cannot assess whether new evidence relates to the period on or before the ALJ's decision." <u>Gurnett</u>, 2018 WL 3853387, at *4 (citing <u>Carrera</u>, 2015 WL 1126014, at *10). The Appeals Council's "rejection of the evidence simply because it was generated after the ALJ's decision, without any legal or factual reasoning, is insufficient." <u>Id.</u> (citing 20 C.F.R. § 404.976(b) ("If [the claimant] submit[s] evidence that does not relate to the period on or before the date of the [ALJ's] hearing decision, the Appeals Council will explain why it did not accept the additional evidence[.]"). Accordingly, this matter must be remanded to the Commissioner for reconsideration in light of the new evidence. <u>See</u> <u>Webster v. Colvin</u>, 215 F. Supp. 3d 237, 243 (W.D.N.Y 2016) (remanding in part for reconsideration in light of new evidence that the Appeals

Council summarily rejected because it was created after the ALJ's decision).

## B. Fibromyalgia

Plaintiff argues that the ALJ erred in failing to find plaintiff's fibromyalgia to be a severe impairment at step two. Dkt. No. 14 at 15-18. The Commissioner argues that such error is harmless because the ALJ "analyzed the limiting effects of the primary symptom of fibromyalgia, pain, as part of the RFC analysis." Dkt. No. 18 (citation and internal quotation marks omitted).

"An impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" Eralte v. Colvin, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)). "When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment." Id. (quotations omitted) (alteration in original). "[T]he severity prong is intended as a de minimis standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" Vicari v. Astrue, No. 1:05-CV-4967-ENV-VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting Bowen v. Yuckert, 482 U.S. 137, 158 (1987)).

This Court has also indicated that the failure to find a specific impairment severe at step two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and the ALJ provides an

explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. See Fuimo v. Colvin, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing Dillingham v. Astrue, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), report-recommendation adopted by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find the plaintiff's anxiety and panic disorder severe at step two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered the plaintiff's anxiety and panic attacks at those subsequent steps).

Here, the ALJ found that plaintiff's neuropathic pain; possible complex regional pain syndrome ("CRPS"), left shoulder; diffuse pain; and obesity were severe impairments. T. 17. However, the ALJ found that there was "some question of fibromyalgia in the record," but because plaintiff had not been formally diagnosed by a rheumatologist and because of a "lack of objective evidence to support the same," the ALJ determined that plaintiff's fibromyalgia was a non-medically determinable impairment. Id. at 19. The ALJ reasoned that plaintiff's fibromyalgia was not severe because (1) it had not been formally diagnosed by a rheumatologist; (2) plaintiff did not meet the 1990 classification for fibromyalgia; (3) plaintiff's symptoms were insufficient to establish fibromyalgia; and (4) there was no objective evidence to support a fibromyalgia diagnosis. Id.

The Court finds that the ALJ's decision indicates a failure to properly assess

fibromyalgia as a medically determinable impairment pursuant to Social Security Ruling ("SSR") 12-2p. Although the ALJ's decision includes a recitation of Section II.A. of SSR 12-2p (based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia), the decision includes no mention or analysis of Section II.B. of SSR 12-2p (based on the 2010 ACR Preliminary Diagnostic Critera).[3] Section II.B. indicates that the Agency may find that a person has a medically-determinable impairment of fibromyalgia if he or she has all three of the following:

> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

Id. The ALJ found that plaintiff failed to met the criteria set forth in Section II.A., and noted that "symptoms by themselves are insufficient to establish a medically determinable impairment." T. 19. Therefore, the ALJ's decision does not suggest a proper analysis of the medical determinability of fibromyalgia under SSR 12-2p because it does not appear that the ALJ considered plaintiff's fibromyalgia under both sections of SSR 12-2p. The

---

[3] SSR 12-2p provides: "We will find that a person has an MDI of FM if the physician diagnosed FM and provides the evidence we describe in section II.A. *or section II. B.*, and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) (emphasis added).

16

Court also notes that it is well settled that "'[fibromyalgia's] cause or causes are unknown, there is no cure and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.'" Warthan v. Comm'r of Soc. Sec., No. 7:16-CV-36 (GTS), 2017 WL 79975, at *7 (N.D.N.Y. Jan 9, 2017) (quoting Cabibi v. Colvin, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014)).

Plaintiffs medical records seem to suggest that she was treated for fibromyalgia symptoms by Dr. Christopher Wolf Gould, see T. 1145-1210; however, the ALJ does not discuss Dr. Wolf Gould's findings and fails to weigh his opinion. Thus, the Court cannot determine whether the ALJ properly considered plaintiff's treatment records from Dr. Wolf Gould in making the determination that plaintiff's fibromyalgia was not a severe impairment. The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings. See Booker v. Astrue, No. 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ's provided rationale does not allow the Court to make that assessment.

Although the ALJ suggests a lack of formal diagnosis, due to the uncertainty whether the ALJ properly considered the available medical evidence in assessing the medical determinability and severity of Plaintiff's impairments, this Court cannot

determine whether the ALJ's step two findings are supported by substantial evidence. Plaintiff's treatment records seem to suggest that Dr. Wolf Gould treated plaintiff for her fibromyalgia symptoms. Because the Court cannot determine whether the ALJ's findings are supported by substantial evidence, remand is necessary.

## C. The ALJ's Analysis of Opinion Evidence and RFC

Plaintiff argues that the ALJ improperly substituted his opinion for the undisputed medical opinions on the issues of work pace, attendance, and standing/walking. Dkt. No. 14 at 21-26. The Commissioner argues that the ALJ properly weighed the opinion of Dr. Jenouri, and, to the extent that the ALJ did err in assessing the opinions of Dr. Grable, Dr. Roy, and Dr. Slyngstad, the error was harmless. Dkt. No. 18 at 3-5, 9-10. When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v.

<u>Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." <u>Schaal</u>, 134 F.3d at 503.  If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given.  <u>See</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  <u>See</u> <u>id.</u> at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  <u>See</u> <u>Martone</u>, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." <u>Martone</u>, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  <u>See</u> <u>New York v. Sullivan</u>, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work

which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

> perform sedentary work because she can lift up to 10 pounds
> occasionally, lift less than 10 pounds frequently and, in an 8-
> hour workday, can sit for 6 hours and stand or walk for a total
> of 2 hours; except she needs to alternate sitting and standing,

> with sitting limited to 45 minutes at a time, then she needs to
> stand for 5 minutes or so, but does not have to leave the work
> area or station during the change of position. [Plaintiff] can
> stand or walk for only 5 to 10 minutes at a time.  In addition,
> due to a shoulder impairment, [plaintiff] is limited to occasional
> reaching on the left, but has frequent use of the left upper
> extremity to handle and feel. [Plaintiff] has full use of the right
> upper extremity.

T. 20.


### 1. Relevant Medical Evidence

Plaintiff's treating physician Dr. Tyler Slyngstad completed a questionnaire dated September 23, 2014.  T. 1548-49.  Dr. Slyngstad indicated that he treated plaintiff for muscle spasms in her left shoulder and lower back.  Id. at 1548.  He indicated that plaintiff's condition and/or the side effects of medication associated with those conditions would cause plaintiff pain, fatigue, diminished concentration, diminished work pace, and require that plaintiff rest at work.  Id.  Thus, Dr. Slyngstad opined that plaintiff would be off-task more than thirty-three percent of the day.  Id.  With regard to absenteeism, Dr. Slyngstad indicated that plaintiff's condition would produce good days and day days, and that she would likely miss more than four days of work per month. Id. at 1548-49.  Dr. Slyngstad opined that plaintiff could sit for approximately four hours out of an eight-hour work day, and change positions every forty-five minutes.  Id. at 1549.  Dr. Slyngstad opined that plaintiff could stand/walk approximately one hour out of an eight-hour work day.  Id.  He indicated that plaintiff could lift up to five pounds for up to three hours per day, and never lift more than five pounds.  Id.  Dr. Slyngstad

determined that these limitations were present from May 2014 through September 2014.

The ALJ noted that Dr. Slyngstad was an acceptable medical source withing the meaning of 20 C.F.R. § 404.1513 and a treating source within the meaning of § 404.1502.  T. 23.  She granted his opinion "partial weight to the extent that it is consistent with the longitudinal record."  Id.  ALJ Greener found that Dr. Slyngstad's forty-five minute sitting limitation was supported by the record, but that the remainder of his restrictions were "speculative and inconsistent with [plaintiff's] activities of daily living."  Id.  The ALJ noted that "Dr. Slyngstad's estimations regarding time off task and days missed from work as well as his limitation that [plaintiff] is only able to sit for 4 hours in the day are inconsistent with [plaintiff's] ability to attend an online college, socialize with all of her friends and support groups and fish for hours at a time."  Id.

In January 2016, consultative examiner Dr. Gilbert Jenouri met with plaintiff for an Internal Medicine Examination.  T. 2513-22.  Dr. Jenouri noted that plaintiff appeared to be in no acute distress.  Id. at 2514.  Her gait was normal, and she could walk on her heels and toes without difficulty.  Id.  Plaintiff's squat was twenty percent, and her stance was normal.  Id.  Plaintiff did not use assistive devices, nor did she need help changing for the examination or getting on and off the examination table.  Id.  Plaintiff was able to rise from her chair without difficulty.  Id.  Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  Id. at 2515.  She had no scoliosis, kyphosis, or abnormality in thoracic spine.  Id.  Plaintiff's lumbosacral spine extension was twenty degrees, flexion seventy

degrees, lateral flexion twenty-five degrees bilaterally, and rotation twenty-five degrees bilaterally.  Id.  "SLR right 45 degrees positive; confirmed seated and left 70 degrees negative."  Id.  Plaintiff had "left sciatic notch tenderness to palpation."  Id.  Her right shoulder forward elevation was one hundred and thirty degrees, and left shoulder forward elevation was ninety degrees.  Id.  Plaintiff had full range of motion in her hands bilaterally.  Id.  Her hip flexion and extension right is forty degrees and left fifty degrees, with a full range of motion bilaterally for interior and exterior rotation.  Id.  Dr. Jenouri noted that plaintiff had "[d]ecreased sensation to fine touch in the left upper extremity with distribution C6 through C8 and hyperesthesia of the right lower extremity with distribution L4."  Id. at 2515-16.  Plaintiff had 5/5 strength in her upper and lower extremities.  Id. at 2516.  Plaintiff's hand and finger dexterity were intact, and her grip strength was 5/5 bilaterally.  Id.

Dr. Jenouri diagnosed plaintiff with low back pain, complex region pain syndrome, left upper extremity pain, right lower extremity pain radiculopathy, and asthma.  T. 2516.  He opined that plaintiff had mild to moderate restrictions walking, standing, sitting long periods, bending, stair climbing, lifting, and carrying.  Id.  Dr. Jenouri noted that plaintiff should avoid smoke, dust, and other known respiratory irritants.  Id.  In his medical source statement, Dr. Jenouri noted that plaintiff could frequently lift or carry up to ten pounds, occasionally lift or carry up to twenty pounds, and never lift or carry over twenty pounds.  Id. at 2517.  Dr. Jenouri indicated that plaintiff could sit for two hours at one time without interruption and for seven hours total in an eight-hour work day; stand for thirty minutes without interruption and for thirty

23

minutes total in an eight-hour work day; and walk for thirty minutes without interruption and for thirty minutes total in an eight-hour work day.  Id. at 2518.  He opined that plaintiff could never reach with her left or right hand, and could occasionally handle, finger, feel, and push/pull with his left or right hand.  Id. at 2519.  Plaintiff could occasionally operate foot controls with her right foot, and frequently with her left.  Id.  Dr. Jenouri stated that plaintiff could occasionally climb stairs and ramps, and never climb ladders, balance, stoop, kneel, crouch, or crawl.  Id. at 2520.

ALJ Greener gave Dr. Jenouri's opinion "some weight to the extent that it is supported by the longitudinal record."  T. 23.  The ALJ noted that "Dr. Jenouri's manipulative limitations are inconsistent with even his own examination which showed that hand and finger dexterity were intact and that grip strength was 5/5 bilaterally."  Id.  As such, the ALJ rejected those restrictions.  Id.  The ALJ also rejected Dr. Jenouri's postural and environmental limitations "because they [were] inconsistent with [plaintiff's] activities of daily living."  Id.  The ALJ noted that restrictions that plaintiff could never balance or be exposed to wetness were inconsistent with her activities, like walking her dog and fishing.  Id.  The ALJ also noted that "[t]here is nothing in the record which justifies any limitation for [plaintiff']s right upper extremity or the finding that she is never able to reach with her left upper extremity."  Id.  However, the ALJ did note that because of plaintiff's left shoulder impairment, she should not lift or carry more than ten pounds.  Id.  The ALJ also found "slightly different limitations regarding [plaintiff's] ability to stand and walk based on the medical evidence of record and [plaintiff's] reports to her treating medical sources."  Id. at 23-24.

Finally, the record contains an April 2016 questionnaire completed by Dr. Roy and Dr. Grable.  T. 24.  Dr. Roy and Dr. Grable indicated that plaintiff suffered from complex regional pain syndrome in her left shoulder and right lower leg, as well as low back pain, and muscle spasms in her low back.  Id. at 3054.  They noted that these conditions would cause plaintiff pain, fatigue, diminished concentration, diminished work pace, and the need to rest at work.  Id.  Thus, they opined that plaintiff would be off-task more than thirty-three percent of the day.  Id.  Dr. Roy and Dr. Grable noted that plaintiff's conditions would produce good days and bad days, and the bad days would lead to more than four days of missed work per month.  Id. at 3054-55.  Dr. Roy and Dr. Grable opined that plaintiff could sit for approximate two to four hours and stand/walk for one hour in an eight-hour work day, and should change positions approximately every thirty minutes.  Id. at 3055.  They indicated that plaintiff could lift up to five pounds occasionally up to one-third of the day, and should never lift over five pounds.  Id.  They noted that plaintiff's conditions would persist into May 2016.  Id.

The ALJ granted Dr. Roy and Dr. Grable's opinion "little weight" because the questionnaire "contain[ed] multiple examples of different handwriting such that it is unclear who completed the form and because it covers a very short period."  T. 24.

## 2. Standing/Walking Limitations

The ALJ found that plaintiff could "stand or walk for a total of 2 hours" in an eight-hour work day.  T. 20.  Plaintiff argues that this assessment is contrary to the medical opinions of four different doctors — the Commissioner's consultant, Dr. Jenouri, and

plaintiff's treating physicians, Dr. Slyngstad, Dr. Roy, and Dr. Grable.  Dkt. No. 14 at 22.

Dr. Jenouri, Dr. Grable, Dr. Roy, and Dr. Slyngstad all opined that plaintiff could

stand/walk for no more than one-hour in a eight-hour work day.  T. 1549, 2518, 3055.

In determining that plaintiff could stand for a total of two hours in an eight-hour work

day, the ALJ rejected Dr. Jenouri's opinion based on plaintiff's "ability to stand and walk

based on the medical evidence of record and [plaintiff']s reports to her treating medical

sources."  T. 23-24.  Similarly, the ALJ found Dr. Slyngstad's opinion "speculative and

inconsistent with [plaintiff's] activities of daily living."  Id. at 23.

Although an "'ALJ cannot arbitrarily substitute his own judgment for competent

medical opinion' he [or she] remains 'free to choose between properly submitted

medical opinions' and to rely on those opinions in reaching his disability determination."

Kessler v. Colvin, 48 F. Supp. 3d 578, 597 (S.D.N.Y. 2014) (internal citation omitted).

Although a treating physician's opinion is not binding on the Commissioner, the opinion

must be given controlling weight when it is well supported by medical findings and not

inconsistent with other substantial evidence in the record.  See Veino v. Barnhart, 312

F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d).  Where the treating physician's

opinion is contradicted by other substantial evidence, the ALJ is not required to give the

opinion controlling weight.  See Halloran, 362 F.3d at 32-33. The ALJ must, however,

properly analyze the reasons that the report is rejected.  See id.  An ALJ may not

arbitrarily substitute his or her own judgment for competent medical opinion. See Rosa

v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

Here, the ALJ discussed her reasoning for failing to adopt the doctors stand/walk

limitations, finding that it was inconsistent with other evidence in the record.  Dr. Jenouri

did not observe plaintiff with difficulties standing or walking; in fact, he noted that

plaintiff appeared to be in no acute distress, had normal gait, and could walk on her

heels and toes without difficulty.  T. 2514.  Dr. Jenouri further noted that Plaintiff did not

use assistive devices, nor did she need help changing for the examination or getting on

and off the examination table.  Id.  Moreover, as the Commissioner sets forth, plaintiff's

medical records generally indicate unremarkable findings, see id. at 1070, 1201, 1204,

1258, 1710, 2242, 2539, 2541, 2548, 2564, 2567, 2581, 3152, 3158, 3161, and note an

exaggeration in walking, see id. at 1285 ("Patient was able to sit up from the chair

without any significant discomfort but as soon as was asked to walk she exhibited a

very animated gait."), 1289 ("immature mannerisms, dramatically expressive . . .

dramatically lost balance when attempting standing on toes . . . attempts back flexion

and cries out in pain it about 10-15 degrees stating it hurts to bend, then bends to 90

degrees while leaning against bed covering her eyes").  In evidence submitted to the

Appeals Council,[4] plaintiff noted that her physical therapy had led to "some functional

improvement," and that she reported that she "walk[ed] more regularly" and was able to

walk "between a half a mile and three quarters of a mile."  Id. at 503.  The record notes

that the doctor reviewed her steps and confirmed that she averaged approximately

---

[4] The Court may analyze evidence submitted to the Appeals Council.  See Perez, 77 F.3d at 46 ("When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary.").

3000 to 4000 steps per day.  Id.

Moreover, although "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves," Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted), the Court concludes that the ALJ did not err in determining that plaintiff's "activities of daily living seem[ed] to indicate that she is more active than alleged."  T. 22.  The ALJ cited plaintiff's ability to take online college classes, communiciate virtually with her CRPS support group, perform household chores when she feels up to it, and fish every few weeks as activities "certainly consistent with the ability to perform a desk type job."  See id. at 22, 692, 699, 2579, 2631, 3318.  Thus, the ALJ's reliance, in part, on plaintiff's activities of daily living was not in error.  See Martone, 70 F. Supp. 2d at 153 ("In summary, the objective medical evidence, the conservative treatment which plaintiff receives, as well as plaintiff's daily activities all belie plaintiff's claims of disabling pain and functional limitations.  Therefore, substantial evidence supports the ALJ's decision to not fully credit plaintiff's subjective allegations.").

There is no indication that the ALJ improperly substituted her own interpretation of the medical evidence; rather, the ALJ assessed the totality of the medical evidence in the record and determined that the doctors' restrictive stand and walking limitations were inconsistent with the record as a whole.  T. 22-24.  Accordingly, remand on this ground is not necessary.

### 3. Work Pace and Attendance

In rendering her RFC determination, the ALJ failed to include limitations related to plaintiff's work pace and attendance.  See T. 20-24.  The ALJ found Dr. Slyngstad's opinion regarding plaintiff's potential time off task and absenteeism was "speculative and inconsistent with [plaintiff's] activities of daily living," citing her ability to attend online college, socialize, and fish.  T. 23.  Similarly, the ALJ discounted Dr. Grable and Dr. Roy's opinion, which was consistent with Dr. Slyngstad's opinion, because it contained different handwriting and covered a "very short period."  T. 24.  As stated above, the Court found that remand was necessary for reconsideration in light of new evidence — i.e., medical evidence from Dr. Grable and Dr. Roy, dated January 20, 2017 to January 25, 2017 and from University of Rochester Medical Center and Strong Memorial Hospital, dated October 6, 2016 to June 6, 2017, which may clarify issues that ALJ Greener raised in her decision, including the doctors' length of treatment with plaintiff and the different handwriting on the assessment.  See T. 24, 647-651.  As such, remand is required to assess plaintiff's work pace and attendance in conjunction with this new evidence.

### D. Step Five

In light of the errors noted above and the effect that such errors have on the RFC and credibility determinations, the ALJ should also reassess her findings at step five on remand to account for any resulting changes in those findings.

## V. Conclusion

**WHEREFORE**, for the reasons state above, it is hereby

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED IN PART and DENIED IN PART**: the motion is granted insofar as the matter will be remanded to the Commissioner for the reasons stated herein, but denied insofar as the Court determines that the ALJ properly determined plaintiff's RFC as to standing and walking limitations; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED IN PART and GRANTED IN PART**: the motion is granted insofar as the Court determines that the ALJ did not err in failing to include standing and walking limitations in the RFC; and it is further

**ORDERED**, that this case be **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated:     February 13, 2019
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge